UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HERALD A. JONES, A24-505-334,

        Petitioner,

        -v-                                           13-CV-206-JTC

ERIC H. HOLDER, Attorney General
of the United States;
JANET NAPOLITANO, Secretary of Security
U.S. Department of Head of Homeland
Security;
MICHAEL PHILIPS, Field Office Director for
Detention and Removal, Buffalo Field Office,
Bureau of Immigration and Customs
Enforcement;
DEPARTMENT OF HOMELAND SECURITY;
TODD TRYON, Facility Director, Buffalo Federal
Detention Facility,

        Respondents.

---

## **INTRODUCTION**

Petitioner Herald Jones, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by the court's order entered April 1, 2013 (Item 3), respondent[1] has submitted an

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

answer and return (Item 5), along with an accompanying memorandum of law (Item 6), and petitioner has submitted a reply and memorandum of law (Items 8,9).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jamaica, entered the United States at an unknown place and on an unknown date, and was not admitted or paroled after an inspection by an Immigration Officer. *See* Item 5-1 ("Payan Decl."), ¶ 5; *see also* Item 1, ¶ 12. Petitioner has the following criminal history:

> On or about February 25, 1982, petitioner was convicted in New York State Supreme Court, Kings County, of criminal possession of a firearm in the third degree. He was sentenced to a one-year term of incarceration.
>
> On or about November 3, 1983, petitioner was convicted in New York State Supreme Court, Kings County, of robbery in the first degree, burglary in the first degree, and robbery in the second degree. He was sentenced to a term of incarceration of eight to sixteen years.
>
> On or about March 19, 1998, petitioner was convicted in New York State Supreme Court, Kings County, of criminal possession of a loaded firearm in the third degree and two counts of criminal sale of a firearm in the third degree. He was sentenced to a term of incarceration of six years to life.

*See* Payan Decl., ¶ 6.

On August 20, 1987, petitioner was served with an Order to Show Cause which charged him with being deportable as an alien who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. *See* Item 5-2 ("Exh. A"), p. 13. On October 5, 1992, an Immigration Judge ("IJ") ordered petitioner's removal from the United States to Jamaica. Payan Decl., ¶ 8; Exh. A, p. 12. On July 24, 2012, upon his release from custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), petitioner was received into DHS custody. *Id.*, ¶ 9.

According to DHS records, on July 25 2012, DHS sent a presentation packet to the Consulate General of Jamaica, (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. Payan Decl., ¶ 10; Exh. A, p. 15. On August 21, 2012, petitioner was interviewed by telephone by a representative of the Consulate. Payan Decl., ¶ 12.

In accordance with regulations, DHS reviewed petitioner's custody status in October 2012. On October 22, 2012, petitioner was notified that, based on the totality of information available, DHS had determined that he would be a threat to the community if released, and detention would be continued pending removal. Payan Decl., ¶ 14; Exh. A, pp. 6-8. On January 24, 2013, a panel was convened at the Buffalo Federal Detention Facility to conduct a further review of petitioner's custody status, including an in-person interview. Payan Decl., ¶ 15. Following completion of the file review and interview, petitioner was notified on February 12, 2013, that DHS had determined to continue his detention in DHS custody. Payan Decl., ¶ 16; Exh. A, pp. 4-5. A further review of petitioner's custody status was conducted in April 2013 and petitioner was advised that DHS determined to continue his detention. Payan Decl., ¶ 17; Exh. A, pp. 2-3.

DHS records indicate that DHS representatives have attempted to contact or have contacted the Consulate on at least 15 occasions from September 2012 to the present. *See* Payan Decl., ¶ 13. A file note entry dated April 23, 2013 indicates that a representative of the Consulate reported that the Consulate was waiting for petitioner's sister to return a verification form in order to establish his identity. *Id.* At the present time,

the request for a travel document is pending with the Consulate. *Id.,* ¶ 18.

Petitioner filed this action on February 25, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA – respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes the detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which

4

requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final;
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens – *i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here) – beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." 8 U.S.C. § 1231(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of

---

[2] INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

5

deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on July 24, 2012, upon his release from state custody. *See* Payan Decl., ¶ 9. He was ordered removed from the United States to Jamaica in an order dated October 5, 1992, an order he did not appeal. *Id.,* ¶ 8; Exh. A, pp. 6, 12. As an alien under a final order of removal,

petitioner's detention was mandatory for the ninety-day removal period pursuant to INA § 241(a).  Thereafter, upon determining that petitioner posed a significant threat to the safety and security of the community, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable."  *Zadvydas*, 533 U.S. at 701.  Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future.  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica in the reasonably foreseeable future.  There are no institutional barriers to petitioner's removal to his native country and Jamaica has not refused to accept him.  The available records reflect that there has been regular and continuing communications between DHS and the Consulate (Payan Decl., ¶ 13), and

8

there is nothing to be found in the submissions before the court that would indicate a likelihood that Jamaican authorities are inclined to deny the request for a travel document. To the contrary, the available evidence shows that in recent years, DHS has successfully repatriated thousands of aliens to Jamaica. *See id.* at ¶ 19.[3] In petitioner's case, the delay appears to result, at least in part, from petitioner's illegal entry into the United States and the process of verifying his identity. Since July 2012, when petitioner was received into DHS custody, the process of obtaining a travel document has been diligently pursued by both DHS and Jamaican authorities. *Id.,* ¶¶ 12-13. DHS records indicate Jamaican authorities are awaiting verification by petitioner's sister and that the case has been forwarded to Kingston to establish petitioner's identity. *Id.,* ¶ 13. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document will be accomplished in the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict DHS's expectation that the issuance of a travel document will be accomplished in the reasonably foreseeable future. Instead, petitioner relies on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas.* Several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to

---

[3]For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica. Item 5-1, ¶ 19 (citing DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3).

meet the petitioner's burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. January 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F.Supp.2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future."); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. March 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. October 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.[4]

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. September 18, 2012); *Kassama*, 553 F.Supp.2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June 12, 2013
p:\pending\2013\13-206.june6.2013

---

[4] To the extent that petitioner seeks an order prohibiting the respondents from removing him from the jurisdiction of this court to another detention facility, this court lacks jurisdiction to impose such an order as decisions regarding the place of confinement of aliens subject to removal orders are within the discretion of the Attorney General. *See Rady v. Ashcroft,* 193 F.Supp.2d 454, 456-57 (D.Conn. 2002); 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii).